ESTATE OF JOHN D. BEALS, JOHN D. BEALS, JR., AND DOUGLAS NICHOLSON, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF WALTER R. COMFORT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM J. WELLER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HAROLD W. COMFORT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBCLIFF V. JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56389–56393. Promulgated December 31, 1934.

*Lawrence P. Mattingly, Esq., Andrew T. Smith, Esq.,* and *Virgil Y. Moore, Esq.,* for the petitioners.

*Richard W. Wilson, Esq.,* for the respondent.

OPINION.

MORRIS: Respondent determined deficiencies in 1928 income tax against the petitioners as follows:

| | |
|---|---|
| Estate of John D. Beals | $16, 408. 67 |
| Estate of Walter R. Comfort | 54, 955. 14 |
| William J. Weller | 76, 791. 15 |
| Harold W. Comfort | 40, 479. 91 |
| Robcliff V. Jones | 42, 019. 12 |

Petitioners allege, in the first instance, that respondent erred in determining that the receipt by them of certain shares of capital stock constituted taxable gains; and, alternatively, that he erred in determining that said gains were ordinary income subject to tax at the ordinary rates, instead of capital net gains subject to tax at 12½ percent. The proceedings were submitted upon a written stipulation of facts, and, upon motion duly granted, were consolidated for hearing.

The stipulation of facts, of which a brief summary is given below, is incorporated herein by reference.

By an agreement entered into on November 1, 1927, Reid Ice Cream Corporation, hereinafter called the Reid Co., sold all of its assets and business, including trade name and good will, as of December 31, 1927, to the Borden Co., hereinafter called Borden, for (a) 89,000 shares, of an aggregate par value of $4,450,000, of Borden's capital stock, (b) cash sufficient in amount (1) to redeem on March 1, 1928, all of the Reid Co.'s preferred stock, of which there was $2,127,500 par value outstanding on November 1, 1927, together with the accrued dividend thereon; and (2) to redeem on January 1, 1928, all of the Reid Co.'s 5-year 6-percent gold notes, of which there was $1,766,000 face amount outstanding on November 1, 1927, together with accrued interest thereon, and (c) the assumption by Borden of all of the other outstanding indebtedness and liabilities of the Reid Co., as of December 31, 1927, the aggregate amount of which is not disclosed by the stipulation. The agreement set forth that the Reid Co.'s preferred stock was redeemable at $110 per share, and its gold notes "at the price of 101."

The undertaking of Borden, in the aforesaid agreement, was subject to certain conditions precedent and to the Reid Co.'s obligations, among which were the following:

(a) The Reid Co. was required to procure and deliver to Borden the several agreements of Walter R. Comfort, William J. Weller and John D. Beals with Borden, in which those three individuals would guarantee unconditionally to make up any deficiency in the net worth of the Reid Co. occurring between June 30, 1927, and December 31, 1927, other than that permitted by the agreement be-

tween the Reid Co. and Borden, and would agree to forthwith enter and, during a period of not exceeding ten years from January 1, 1928, continue in the employ of Borden or one of its subsidiaries in an advisory capacity as Borden's directors from time to time might request, and would further agree that, except in the employ of Borden or its subsidiaries, they would not on or before January 1, 1933, either directly or indirectly engage in the ice cream business or without the consent of Borden be interested, or hold stock in or extend financial aid or assistance to any firm or corporation engaged in the ice cream business, within certain described territory.  In consideration for their making and entering into such agreements, Borden agreed to issue to the said three individuals, to be divided among them in such proportions as they might mutually agree upon, 4,667 shares of its capital stock.

(b) The Reid Co. was required to procure and deliver to Borden, the several agreements of Robcliff V. Jones, Harold W. Comfort, and Walter R. Comfort, Jr., with Borden, in which they would agree to enter and continue in the service of Borden and/or its subsidiaries, as officers and/or employees, the initial period of employment and the amount of cash salary to be specified in each of said agreements to be such as will be satisfactory to the said three individuals.

(c) The Reid Co. was required to procure and deliver to Borden, the several agreements of Robcliff V. Jones, Harold W. Comfort, and Walter R. Comfort, Jr., with Borden, that they would not, except in the employ of Borden or its subsidiaries, on or before January 1, 1933, engage in the ice cream business or be interested or hold stock in or extend financial aid or assistance to any firm or corporation engaged in the ice cream business, in certain designated territory. In consideration for their making and entering into such agreements, Borden agreed to issue to the said three individuals, to be divided among them in such proportions as they might indicate, 2,500 shares of its capital stock.

(d) The Reid Co. agreed to take the necessary steps to change its corporate name to some other corporate name in which neither the name " Reid " nor the words " Ice Cream " should appear, so that such new corporate title should be entirely dissimilar from either the name " Reid Ice Cream Corporation " or " Reid's Union Dairy."

(e) The Reid Co. agreed that it would, with all reasonable dispatch, take the necessary steps for its dissolution and the distribution to its common stockholders, of the shares of Borden's capital stock then held in its treasury.

The Reid Co. changed its corporate name to Milk Products Corporation of Delaware, and, after compliance with the terms and conditions of its agreement with Borden, in January 1928, distributed

to its common stockholders 89,000 shares of Borden's capital stock and dissolved.

Of the 7,167 shares of its capital stock which Borden agreed to issue, as set forth in (a) and (c) above, the petitioners herein received the number of shares set opposite their respective names:

| | |
|---|---|
| Walter R. Comfort, Sr | 2, 060 |
| William J. Weller | 1, 960 |
| John D. Beals | 647 |
| Robcliff V. Jones | 1, 000 |
| Harold W. Comfort | 1, 000 |

Seventy-five percent of the shares so issued to and received by Walter R. Comfort, Sr., William J. Weller and John D. Beals was consideration for their agreements to refrain from competition with Borden.

The fair market value of shares of capital stock of Borden, as of January 3, 1928, was $170 per share.

The petitioners herein and their associate, Walter R. Comfort, Jr., owned a majority of the common stock of the Reid Co. and its predecessor corporations continuously from their organization. The Reid Co. began business on January 1, 1925.

The late Walter R. Comfort and William J. Weller were continuously directors, and president and treasurer, respectively, of the Reid Co. and its predecessors for a period of more than forty years next preceding January 1, 1928; the late John D. Beals was a director and the secretary of the Reid Co. and its predecessors for a period of more than thirty years next preceding January 1, 1928; and Harold W. Comfort and Robcliff V. Jones were during 1927 and on January 1, 1928, directors of the Reid Co. and for eight years next preceding January 1, 1928, general sales and advertising manager and general manager, respectively, of the Reid Co. and its predecessors.

The acquisition of the Reid Co.'s assets and business was authorized by Borden's board of directors by resolution of November 1, 1927, the preamble of which states in part as follows:

WHEREAS, under the terms of the said proposed contract the consideration which this Company is to pay for the acquisition of said property will consist of 96,167 shares of the par value of $50. each of this Company's capital stock and the furnishing of cash to the amount of $4,214,121.25 for the redemption of the outstanding Preferred Stock and Five-Year 6% Gold Notes of said Reid Ice Cream Corporation. In addition to the assets so to be received by it this Company will also, in consideration of the above stock issues, secure certain guarantees and agreements to perform services. * * *

On its books of account, Borden recorded the issue of 96,167 shares of its capital stock, being the total number of shares mentioned in its agreement with the Reid Co., by one journal entry charging and crediting, respectively, " Milk Products Corporation of Delaware " and " Capital Stock ", in the amount of $4,808,350, with the explana-

tion " To record the issuance of 96,167 shares of Borden's Common Stock as consideration in part payment of the assets and business acquired from the Milk Products Corporation of Delaware (formerly Reid Ice Cream Corporation).

The petitioners computed net income in their 1928 income tax returns on the cash receipts and disbursements basis. They included nothing in income in respect of the shares of Borden's stock issued to them by Borden pursuant to their separate agreements with Borden. As to each petitioner, the respondent determined that he realized income upon the receipt of Borden shares pursuant to his separate agreement with Borden, to the extent of the fair market value thereof, computed at $170 per share, which income was subject to tax at the ordinary income rates.

The petitioners contend that the 6,667 shares of Borden's stock received by them in 1928, pursuant to their separate agreements with Borden, were received by them in exchange for their common stock in the Reid Co., pursuant to the plan of reorganization of the latter company, and, consequently, the resulting gains are, by the provisions of section 112 (b) (3) of the Revenue Act of 1928, not to be recognized for income tax purposes. Failing in that contention, the petitioners contend, in the alternative, that the gains are capital gains, within the meaning of section 101 (c) (1) of the aforesaid act, arising from the disposition of capital assets—the sale of rights to engage in the ice cream business within a designated territory for a definite period of time—and, therefore, are subject to tax at the rate of 12½ per cent, as provided by section 101 (a) of the said act. The respondent not only opposes these contentions of the petitioners, but avers that the said 6,667 shares were paid to and received by them as compensation for services and for their agreements to refrain from engaging in the ice cream business, except in their capacities as officers and employees of Borden, and, therefore, that the resulting gains are recognizable and taxable as ordinary income.

We pass the question as to whether or not the sale of the Reid Co.'s assets and business to Borden, together with the distribution of the Borden shares received as part consideration therefor to the stockholders of the Reid Co. and the dissolution of the latter, constitute a reorganization as defined by section 112 (i) (1) of the 1928 Act, which, of course, must be a major premise of petitioners' first contention; for unless it can be said that the 6,667 Borden shares in question were received by the petitioners in exchange for their shares in the Reid Co., the question is of no importance. Section 112 (b) (3), under which petitioners claim immunity from tax on the gains derived from the receipt of those shares, deals only with gains resulting from an exchange of securities, and, unless the facts of the instant

case disclose an exchange of shares in the Reid Co. for the 6,667 Borden shares, the provisions of that section can have no application here, regardless of whether or not there was a statutory reorganization of the Reid Co. The agreements between the Reid Co. and Borden and between these petitioners and Borden establish beyond any doubt whatever that the 6,667 Borden shares came to the petitioners, not in exchange for their shares in the Reid Co., nor because of any rights as shareholders of the Reid Co., but solely as compensation for their undertakings in their several agreements with Borden, and these were (1) to guarantee Borden against any deficit in the net worth of the Reid Co. occurring between June 30, 1927, and December 31, 1927, (2) to enter the employ of Borden as officers and employees, and (3) to refrain from engaging in competition with Borden in the ice cream business and from lending financial aid and assistance to others so engaged, until January 1, 1933. The considerations of the agreements thus involved no exchange of securities in the Reid Co. for these 6,667 Borden shares, and the gains in question are not, therefore, within section 112 (b) (3).

The petitioners' alternative contention is untenable. It may be readily conceded, upon the numerous authorities quoted in their brief, that the right of an individual to pursue his chosen profession, occupation, or business is property. But such right is personal and inalienable. One can no more dispose of such a right than he can alienate his right to own and possess property, or his rights to " life, liberty and the pursuit of happiness." The petitioners here did not dispose of property or any capital asset in their agreements with Borden; they merely agreed to refrain, for a definite period, from exercising their individual rights to engage in the ice cream business in such a manner as to be brought into competition with Borden, and for their agreements in that respect they received compensation in Borden shares, and such compensation is within the realm of ordinary income.

*Judgment will be entered for the respondent.*