*744 OPINION.
Hill:
The first issue for decision in this case is whether or not the sum of $3,000, which was paid to petitioner’s decedent on January 8, 1936, as interest on the alimony note for $100,000 referred to hereinabove, constituted taxable income. The deficiency determined by respondent results from his addition of the amount of $3,000 to the net income disclosed by petitioner’s return.
Petitioner contends in substance that the amount represented alimony or a payment in lieu of alimony, and hence did not constitute taxable income to decedent, citing in support of its position Longyear v. Helvering, 77 Fed. (2d) 116, which affirmed 28 B. T. A. 1086.
It is now settled beyond controversy that an amount received by a divorced woman as alimony or in lieu of alimony is not taxable income. Gould v. Gould, 245 U. S. 151; Mary R. Spencer, 20 B. T. A. 58; Maud H. Bush, 33 B. T. A. 628; Princess Lida of Thurn and Taxis, 37 B. T. A. 41. This doctrine is not questioned here by either party; the issue relates solely to the true character of the payment involved.
In the Longyear case, supra, a settlement agreement made in lieu of alimony provided for the payment to the divorced wife of $12,500 out of a special fund; a further sum equal to interest at the rate of 6 percent per annum upon $150,000 from a stated date to the date of the agreement, and a note for $150,000 bearing interest at 6 percent per annum. We held that the interest payments were a part of the agreement made in lieu of an alimony award, and were not deductible by the husband as interest on an indebtedness. In affirming our decision, the Court of Appeals for the District of Columbia said:
A claim made by petitioner for a deduction of such part of the payments made to Mrs. Longyear as interest paid upon the note held by her can not be sustained. The note represented alimony secured to her by agreement between herself and her former husband. The obligation did not lose the character of alimony when incorporated in the note. Gilman v. Commissioner, (CAA) 53 F. (2d) 47, 50 * * *
Respondent insists that the $3,000 payment in controversy here was merely compensation for the use of money, that is to say, interest paid by Archibald to his divorced wife for use of the $100,000 alimony which he was obligated by their agreement to pay to her on or before December 31,1931, but which he did not pay when due, and in lieu of which he delivered to her the nonnegotiable promissory note for $100,000, bearing interest at 5 percent per annum, set out in our findings of fact above.
Respondent points to the fact that the settlement agreement between Archibald and his wife contained no provision for the payment of any interest and that the payment of interest was made *745 pursuant to a subsequent agreement embodied in the note, and on this ground he attempts to distinguish the present proceeding from Longyear v. Helvering, supra.
Respondent’s position, we think, is untenable. The distinction urged is unimportant here. The parties have stipulated, and we have found the fact to be, that Archibald’s note was delivered to decedent in lieu of the alimony payment. The interest provided for to the extent paid was, therefore, a payment in lieu of alimony, and, aside from the affirmative stipulation of the parties, this appears to be true.
By the original settlement agreement Archibald was obligated to pay his divorced wife $100,000 alimony not later than December 31, 1931. If he had made such payment on that date, he would have complied with his agreement, but the payment of that amount one year later, as provided in the note, would not have been the equivalent in value of $100,000 paid on the original due date, if paid without interest. Obviously, the present worth at December 31, 1931, of a promise to pay $100,000 one year after that date was less than $100,000. The diminution in value was exactly equivalent to the fair value of the use of that sum of money for the period payment was deferred. Archibald agreed to pay interest at 5 percent per annum, which may be assumed to have been a fair rate. It follows that the interest and principal of the note, if and when subsequently paid, could not in any event have exceeded in total value the amount of the alimony provided for in the settlement agreement. The interest paid on January 8, 1936, in the amount of $3,000 was less than the amount of interest due at the stipulated rate. Such amount was a payment in lieu of alimony, and did not constitute taxable income to petitioner’s decedent. Respondent’s action on this issue is reversed.
The second issue arises from petitioner’s allegation that respondent erred in failing to determine that the amount of $30,000 which decedent received in 1936 from the Chicago Fannie May Candy Co. and the Archibald Candy Corporation constituted alimony payments and not taxable income. The amount was included in gross income' reported in decedent’s tax return for 1936, and by reason thereof petitioner contends that its tax for that year has been overpaid in the amount of $3,494.71.
In the alternative, petitioner contends that under section 22 (b) (2) of the Revenue Act of 1936 the annuity of $30,000 received by decedent in 1936 was not taxable in its entirety, but only to the extent of 3 percent of the excess over cost. Petitioner also argues that the transaction amounted in effect to an exchange in 1930 by decedent of her interest in the stock of the two candy companies for an annuity, and, if any profit was realized from such exchange, it was *746 taxable in the year 1930. Petitioner further contends in the alternative that the annuity received in 1936 should be treated as proceeds of a capital gain and under section 117 (a) of the applicable statute only 60 percent thereof may be included in gross income.
On brief petitioner argues that the payments made under the contract of June 5, 1930, were in part consideration for the release by decedent of claims against the candy companies, and in part consideration for her agreement not to compete. We are urged to adopt this construction on the ground that any other interpretation of the contract would render it void as contrary to public policy, and that if possible it should receive such interpretation as would render it valid. For purposes of the present proceeding, we need not attempt to decide whether or not the contract was valid. Income derived from an executed contract, even if void and unenforceable, is nevertheless subject to tax. Christian H. Droge, 35 B. T. A. 829. See also United States v. Sullivan, 274 U. S. 259.
The evidence we think wholly fails to sustain petitioner’s principal contention that the $30,000 received by decedent in 1936 did not represent payments made solely in consideration of her agreement not to enter into competition with Archibald’s candy corporations.
It is shown that decedent had been trained in retail merchandising, particularly in the food lines; she was of an aggressive business type; she had been active in the management of the candy companies from the inception of the business; after rupture of relations between herself and Archibald the business of the candy companies began to suffer very materially, and Archibald, in connection with the negotiation and preparation of the settlement agreement between himself and his wife, particularly desired to prevent her entering into competition with the candy companies subsequent to divorce. This appears to have been the motivating cause for the inclusion in the agreement of the provisions of paragraph 3 set out hereinabove. Other facts appearing in the record lead to the same conclusion.
While it is true that the settlement agreement of July 5, 1930, to which each of the candy companies were parties, formerly required decedent to execute a release of all claims which she had “in and to any of the property and effects belonging to” such companies, in addition to her agreement not to compete, there is no evidence i|n the record to indicate the character or extent of her claims, if any. In decedent’s action against Archibald for an accounting, she apparently claimed' only an equitable ownership of one-half of the capital stock of each company, which was not a claim “to any of the property and effects belonging to” the corporations.
That the annual payments by the candy companies were in fact to be made exclusively as consideration for decedent’s agreement not *747 to compete, is clearly indicated by the testimony of the witness, Roemer, who was secretary of each of the corporations mentioned, and also Archibald’s personal attorney, representing him in the negotiation of the settlement agreement. He testified that the candy companies each agreed to pay Mrs. Archibald $15,000 annually “to keep her out of business;” that since the contract related also to other matters, it was desired that the entire controversy be cleared up, and to that end it was provided “that whatever consideration ran from one to the other, released all of the claims that each might have against the other.” The witness further stated that the release by. decedent of any claim she might have, had nothing to do with the payments to be made by the corporations.
We may here point out that one-half of :the $30,000 received by decedent in the taxable year 1936 was paid by the Chicago Fannie May Candy Co., which corporation was not a party to the settlement agreement. This corporation on June 1, 1932, acquired at public sale the assets of the Fannie May Candy Shops, Inc., and it is not shown that it assumed any of the liabilities of the latter company. The resolution adopted by the board of directors of the Chicago Fannie May Candy Co. authorizing the payment of $15,000 per annum to decedent, affirmatively stated that it was in consideration of her agreement to refrain “from engaging in any candy business, either directly or indirectly, for a period of years.”
In respect of the sum of $15,000 paid in 1936 by the Chicago Fannie May Candy Co., we think there can be no doubt that it was solely consideration for decedent’s agreement not to enter into competition. In respect of the like sum paid by the Archibald Candy Corporation, wo can reach no other conclusion, from a careful consideration of the whole record, than that it was also exclusively for the same purpose. We so hold.
This brings us to a discussion of the alternative contentions of the petitioner. The first such contention is that under section 22 (b) (2) of the Revenue Act of 1936, the annuity of $30,000 received by petitioner in 1936 is not taxable in its entirety, but only to the extent of the excess over 3 percent of the cost basis.
-Tile cited statute provides, so far as material here, that there shall be excluded from gross income amounts received as an annuity under an annuity or endowment contract to the extent of the excess of the amount received in the taxable year over an amount equal to 3 percent of the aggregate premiums or consideration paid for such annuity.
Petitioner argues that the cost basis of the annuity involved was its value at the time of acquisition, which the parties have stipulated to be $369,142.50, and that only the excess over 3 percent thereof, or $18,925.72, is taxable as income received in 1936. The cogency *748 of petitioner’s argument depends upon the assumption that decedent did in fact purchase an annuity in 1930. In Hooker v. Hoey (U. S. Dist. Ct., N. Y.) 27 Fed. Supp. 489; affirmed per curiam on opinion below (C. C. A., 2d Cir.), 107 Fed. (2d) 1016, the court said:
The exemption as to annuities in tlie income tax statutes does not cover cases where an annuity is not in reality purchased, even though the transaction may be somewhat analogous to the purchase of an annuity. Helvering v. Butterworth, 290 U. S. 365, * * *
In the present case decedent, by her agreement not to enter into competition with the candy companies, can not be said to have pu/r-chased an annuity any more so than if the contract had provided on similar terms for the payment to her of compensation for personal services. Such compensation, even though somewhat analogous to an annuity, as in the case of bonuses or pensions, is nevertheless taxable income. Hooker v. Hoey, supra.
Petitioner’s argument that decedent purchased an annuity is bottomed on the premise that she exchanged therefor in 1930 her interest in the stock of the two candy corporations. This contention is disposed of by the conclusion we reach hereinabove that the amount of $30,000 received by decedent in 1936 represented payments to her solely in consideration of her agreement not to compete. The same conclusion also disposes of the contention that any gain from the transaction was taxable in 1930.
The remaining alternative contention of petitioner that the $30,000 received by decedent in 1936 should be treated as proceeds of a capital gain can not be sustained. Consideration received under an agreement not to compete is taxable as ordinary income, and is in no sense capital gain. Estate of John D. Beals, 31 B. T. A. 966, 971; affd., 82 Fed. (2d) 268; Cox v. Helvering, 71 Fed. (2d) 987; Salvage v. Commissioner, 76 Fed. (2d) 112; affd., 297 U. S. 106.

Decision of no deficiency a/nd no overpayment of taw will he entered.