Alfons B. Landa v. Commissioner. Marjorie M. Astin v. Commissioner.
Landa v. Commissioner
Docket Nos. 26018, 26027.
United States Tax Court
1952 Tax Ct. Memo LEXIS 243; 11 T.C.M. (CCH) 420; T.C.M. (RIA) 52119; April 25, 1952
*243 Raymond N. Beebe, Esq., 815 15th St., N.W., Washington, D.C., and Raymond C. Cushwa, Esq., for the petitioner in Docket No. 26018. Meredith M. Daubin, Esq., for the petitioner in Docket No. 26027. E. M. Woolf, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax of $669.42 and $4,970.50 for the years 1943 and 1944, respectively, in Docket No. 26018 (petitioner Alfons B. Landa) and $154.51 in income tax for 1943 in Docket No. 26027 (petitioner Marjorie M. Astin). Computation of tax for 1943 in Docket No. 26018 involves the year 1942 under the Current Tax Payment Act of 1943. The sole issue remaining in controversy in Docket No. 26018 after concessions by the parties in that proceeding, and the single question presented for decision in Docket No. 26027 is whether a portion of payments by a husband to his divorced wife was on account of the principal of an indebtedness, or constituted alimony deductible by the husband in Docket No. 26018 and taxable to the divorced wife in Docket No. 26027, under sections 23(u) and 22(k) of the Internal Revenue Code, respectively. *244 The proceedings have been consolidated. Findings of Fact Petitioner Alfons B. Landa, hereinafter called Landa, and petitioner Marjorie M. Astin, hereinafter called Astin, filed their individual income tax returns for the years involved with the collector of internal revenue for the district of Maryland. They are residents of Washington, D.C. Landa is an attorney practicing in the District of Columbia. In June 1930 Landa and Astin were married. On December 1, 1937, they separated. Between December 1, 1937, and December 1, 1941, Landa paid $300 per month to Astin for her support, plus additional amounts aggregating approximately $25 per month for incidental expenses such as medical bills and the upkeep of an automobile. On December 1, 1941, at which time Landa was 44 years of age, he and Astin entered into three agreements, respectively entitled "Agreement Pendente Lite," "Separation Agreement," and "Note Agreement." The three instruments were executed simultaneously. The notation "(L.S.)" appears after each signature of the parties, all signatures being acknowledged before a notary public. The law firm of Alvord & Alvord represented Astin in the preparation of the agreements. *245 The "Agreement Pendente Lite" stated that Landa and Astin had separated; that Astin had grounds for divorce by reason of the long separation; that she had declared her intention to establish a permanent residence in Florida where she would seek a divorce; and that Landa desired to make provision for her separate maintenance and support pendente lite. The instrument provided that Landa would pay to Astin $700 in cash, immediately upon execution of the agreement, which was to be used to pay Astin's debts. Astin agreed that she would not thereafter contract any debts for which Landa would become liable. Landa agreed that he would pay Astin's transportation expenses from Washington, D.C., to the place selected by her for a Florida residence; that he would pay reasonable expenses incurred in obtaining a divorce; and that he would further pay $85 per week to Astin during her first 13 weeks of residence in Florida, which would be in addition to all sums otherwise provided for under any agreement between the parties. The "Separation Agreement" stated that Landa and Astin had separated and had failed at all attempts at reconciliation; that they desired to enter into an agreement under which *246 they might continue to live separately and under which provision would be made for Astin's maintenance; that all personal property then in possession of Astin was her sole and separate property; and that Landa had theretofore been indebted to Astin in the sum of $30,000 and they desired to settle forever all property rights growing out of their marriage relationship. The agreement provided that neither would endeavor to compel restoration of conjugal rights. It provided that during Landa's life, but only so long as Astin remain unmarried, he would pay to her the sum of $150 per month, payments to begin on the date of execution of the agreement and to be made thereafter on the first day of each month. The agreement further provided that each party released all rights then existing or which might thereafter exist, by reason of their marriage, in any property then owned or thereafter acquired by the other party. Each party waived all rights to share in any property to which the other party might become entitled under the laws of the District of Columbia, all rights of dower or courtesy, and any right to any distributive share of any property of the other party or any right of election *247 to take against any last will and testament of the other party. The agreement was to continue in full force and effect and to be binding whether the marriage continued or was dissolved. The "Note Agreement" stated that Landa was indebted to Astin "in the sum of $30,000, which indebtedness was incurred after their marriage and while they were living together as husband and wife * * *." The instrument stated that they had separated and contemplated termination of their marital relationship; that in the event the marriage was dissolved, Landa desired to provide for Astin's security by giving evidence of that indebtedness; and that both parties desired Alvord & Alvord to act as custodian of the evidence of indebtedness and to assist in execution of the covenants. The instrument provided that in the event that a final decree of divorce were issued to Astin, Landa agreed to execute and deliver to Alvord & Alvord his promissory note to Astin's order in the sum of $30,000, the note to contain the terms and conditions set forth in the promissory note attached to the agreement. The note was to bear the same date as the date of the final decree of divorce, and the first monthly payment of principal *248 and interest was to be due and payable on the 15th day of the first month following the date of execution. Delivery of the note was to be made by Landa to Alvord & Alvord within ten days after the final decree of divorce. Alvord & Alvord were to accept delivery on Astin's behalf and to hold the note for the protection of the interests of both parties until it was paid in full. The instrument further provided that in the event of Astin's death before the principal and interest should have been paid in full, Alvord & Alvord should cancel the note and deliver it to Landa. In the event of Astin's remarriage, Landa agreed that he would pay to her, upon 30 days' written notice from her or from Alvord & Alvord, the sum of $5,000 in cash, which should be in addition to all other payments otherwise provided for under that or any other agreement between the parties. The following was the unsigned "Promissory Note" attached to the above agreement: "PROMISSORY NOTE "$30,000 Washington, D.C. 1942 "FOR VALUE RECEIVED, I, ALFONS B. LANDA, promise to pay to the order of MARJORIE MONDELL LANDA, the sum of THIRTY THOUSAND DOLLARS ($30,000) with interest at the rate of 6% per annum on said principal *249 sum, or so much thereof as may from time to time remain unpaid. "Principal and interest payable at the Hamilton National Bank, 14th and G Streets, N.W., Washington, D.C., in monthly installments of TWO HUNDRED DOLLARS ($200.00) each, commencing on the fifteenth day of , 1942, and continuing on the fifteenth day of each month thereafter until paid; each installment, when so paid, to be applied first to the payment of interest accrued on the unpaid principal sum, and the residue thereof to be credited to said principal sum. "And it is agreed that if default be made in the payment of any one of the aforesaid installments of principal or interest when and as the same shall become due and payable, then and in that event, the unpaid balance of the principal sum shall, at the option of the holder hereof, at once become due and payable, anything hereinabove contained to the contrary notwithstanding. "This note is non-negotiable, and shall be void in the event of the death of the payee, the said MARJORIE MONDELL LANDA, before payment in full of principal and interest has been made. "Alfons B. Landa" A letter dated December 8, 1941, was sent by Landa to Astin. Its purpose was to prevent *250 a reduction in payments to Astin during the period after execution of the above agreements and prior to the grant of a divorce decree. The letter concluded by requesting Astin to indicate her acceptance if the proposal was agreeable to her. Her name was written in under the legend "Accepted." The following is the substance of the letter: "Dear Marjorie: "In order to remove an ambiguity in the Note Agreement and in order to avoid an unintended result, I propose to begin the payments upon the Note as of December 15, 1941, to be applied in the same manner as if the Note were dated December 15, 1941. These payments, however, will cease after the payment due April 15, 1942 if the final decree of divorce has not been issued and if I am convinced that you do not intend faithfully to prosecute the proceedings for a final decree of divorce." * * *
On April 18, 1942, a final decree of absolute divorce was granted to Astin, as plaintiff, from Landa, as defendant, by the circuit court of the Fifteenth Judicial Circuit of Florida in Palm Beach County. The decree confirmed and approved a special master's report of testimony and findings. That report had found that the Court had jurisdiction *251 of the subject matter and parties; that the plaintiff had been a resident of Florida for more than 90 days; that defendant had filed an answer and was represented by counsel; that no children had been born in marriage; that the plaintiff and defendant had made a property settlement and the plaintiff was not requesting suit money or alimony; and that the defendant had been guilty of desertion for one year. The report recommended that a divorce decree be granted. On an undisclosed date Landa executed the instrument entitled "Promissory Note" which had been attached to the "Note Agreement." During each of the years 1942, 1943, and 1944 Landa made payments to Astin as provided in the "Separation Agreement," and in the "Note Agreement." Landa's 1942 tax return deducted the sum of $2,973.33 as alimony, and his returns for 1943 and 1944 deducted the amount of $4,200 in each year as alimony. Respondent's notice of deficiency to Landa determined that the amounts of $573.33, $600, and $696.24 were not deductible for the years 1942, 1943, and 1944, respectively, since they represented payments of principal on the note, the remainder of the above amounts claimed as deductions by Landa being *252 allowed by respondent partly as alimony and partly as interest on the note. Astin reported, in her income tax return for 1943, alimony in the amount of $1,800 and interest in the amount of $1,800. Respondent's notice of deficiency to Astin determined that she had understated her income by $600, having received alimony in that year of $4,200. The amounts in controversy of $573.33, $600, and $696.24 paid by Landa to Astin under the "Note Agreement" during the years 1942, 1943, and 1944, respectively, constituted repayments of the principal of an indebtedness. Opinion We are again confronted with an adversary proceeding where two taxpayers have conflicting interests but the revenue seeks to collect from but one. See Fisher v. Commissioner (C.A. 2), 59 Fed. (2d) 192; Ruth W. Collins, 14 T.C. 301; Robert Wood Johnson, 10 T.C. 647. There is perhaps some added interest here for by the process of consolidation the actual adverse parties are engaged in the same litigation. Petitioner Landa who was formerly the husband of petitioner Astin insists that an agreement drawn in terms of the repayment of an indebtedness with interest was in reality *253 no more than provision for alimony or support money. See, e.g., Estate of Mildred K. Hyde, 42 B.T.A. 738. Out of total annual payments by Landa to Astin of $4,200, only about $600 for each year is in controversy. Certain sums are agreed by all concerned to have been true alimony; and a part of the money paid under the agreement in dispute, referred to as the "Note Agreement," is conceded to be taxable to Astin and deductible by Landa, whether treated as alimony on the one hand or as interest on the other. Landa, of course, contends that the $600 in issue was also alimony and thus deductible by him, while it is Astin's position that under the agreement this was a repayment of principal and consequently not taxable to her. Respondent, assuming in effect the position of a stakeholder, has protected himself by taking inconsistent positions in opposition to that maintained by each of the taxpayers in their respective proceedings. Both parties being before us, and having arrived at their agreement in what we may safely suppose was an arms-length dealing, we start with the assumption that the agreement was in fact what it purported to be and that the recitals contained in it *254 are statements of the true facts. It would take internal evidence of some weight to lead us to the opposite conclusion. In fact, such indications generally support the assumption. In the first place, the payments both of principal and interest would be continued beyond Astin's remarriage, although obviously the husband's obligation of support did not extend so far. In the second place, the parties at the same time entered into an agreement for additional payments which were expressly referred to as alimony. And in the third place, these payments as contrasted with those in the so-called note agreement were expressly limited to cease at Astin's remarriage. There was, it is true, testimony on behalf of Landa designed to show that in the negotiations leading to the execution of the note agreement its ultimate terms were conceived for purposes inconsistent with the repayment of a loan and as additional protection to Astin in securing her support from Landa. Whether this evidence was properly admitted might be an interesting question to which, however, we are not now required to give an answer. In the light of the agreement itself and the circumstances of its execution, we prefer to rely *255 on the contents of a written document rather than to ascribe probative weight to oral testimony contradicting it. Decision will be entered under Rule 50 in Docket No. 26018. Decision will be entered for the petitioner in Docket No. 26027.