WILLIAM M. IVLER and BARBARA IVLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ivler v. Commissioner
Docket No. 2491-73.
United States Tax Court
T.C. Memo 1976-223; 1976 Tax Ct. Memo LEXIS 180; 35 T.C.M. (CCH) 976; T.C.M. (RIA) 760223; July 19, 1976, Filed *180 Melvyn I. Weiss, for the petitioners. Peter J. Panuthos, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined the following deficiencies in the Federal income tax of petitioners: TYE
Deficiency
December 31, 1966
$26,625.57
December 31, 1967
29,677.44
We must decide if $235,833 and $64,167 reported by petitioners as long-term capital gains on the returns which they filed for 1966 and 1967, respectively, were long-term capital gains or ordinary income. FINDINGS OF FACT Certain facts have been stipulated and are so found. Petitioners are husband and wife. They filed joint Federal income tax returns for the years in issue with the Internal Revenue Service Center, Andover, Massachusetts. They were residents of Stamford, Connecticut, when they filed their petition with this Court. William M. Ivler (William) was admitted to the bar of the State of New York in 1947. From that time to the summer of 1963 he practiced law in that State. In 1960 William was retained by the Gevyn Construction Corporation (Gevyn) as its attorney. Gevyn had been organized in 1958 by George and *181 Evelyne Ungar who owned two-thirds and one-third, respectively, of its outstanding stock. At all times relevant, Gevyn was an electing small business corporation within the meaning of subchapter S (sections 1371 et seq., Internal Revenue Code of 1954, as amended [1]). By 1963 from one-tenth to one-fifth of William's gross fees was derived from the Gevyn account. In July 1963 the Ungars invited William to assume the vice-presidency of Gevyn. In the following month William accepted that offer, having consequently to forego the practice of law. It was agreed that William's salary be fixed at $30,000 annually and that he acquire one-third of the stock of Gevyn outstanding. In fact, William never received any Gevyn stock. Rather, he entered into an agreement with Gevyn in February 1966, pursuant to the terms of which he was to receive a cash payment of $160,000 and, for a period of two years from December 1, 1965, $100,000 annually. Pursuant to that agreement which was dated November 30, 1965, William received $266,833.33 in 1966 and $91,666.67 in 1967. On *182 the return which they filed for 1966 petitioners reported as ordinary income $31,000 of the amount which William received pursuant to the aforesaid contract; the balance they reported as long-term capital gain. On the return filed for the subsequent year $27,500 was reported as ordinary income and the balance as long-term capital gain. OPINION The contract dated November 30, 1965, characterized the payments made pursuant to its terms as compensation for services. Respondent contends that as a signatory of the contract, William is bound by that characterization and had therefore to report the entire amount received pursuant to the terms of the contract as ordinary income. Petitioners contend that the character of the payments must be determined with reference to all of the circumstances attendant upon their being made. It is firmly established that in determining the character of payments made pursuant to a written contract, we will look beyond its provisions if there is "strong proof" that the contract does not reflect the substance of the agreement entered into by the parties. Carl L. Danielson,44 T.C. 549 (1965), revd. 378 F.2d 771 (3rd Cir. 1967), *183 cert. denied 389 U.S. 858 (1967). In support of their characterization as long-term capital gain of $300,000 of the amount received by William pursuant to the contract dated November 30, 1965, petitioners contend that the $300,000 was paid, not as compensation for services, but in consideration of William's having released rights to an equity interest in Gevyn. Whether proof of such a contention would support petitioners' characterization of the $300,000 in issue depends upon how William acquired the rights he is purported to have released. Cf. Commissioner v. Ferrer,304 F.2d 125 (2d Cir. 1962), revg. in part 35 T.C. 617 (1961). [2] The record compiled herein hardly elucidates the terms of the agreement pursuant to which William acquired those rights, although petitioners must adduce strong proof in support of their contentions. Carl L. Danielson,supra.Ultimately petitioners appear to contend that by giving up the practice of law in order to devote all of his time to Gevyn, William acquired rights to receive one-sixth of Gevyn's stock on June 30, 1965, and another one-sixth three years thereafter. If this was *184 so, we must nevertheless hold that the $300,000 in issue was ordinary income. Consideration received for refraining from labor is taxable as ordinary income. See Salvage v. Commissioner,76 F.2d 112 (2d Cir. 1935), revg. a Memorandum Opinion of the Board of Tax Appeals, affd. 297 U.S. 106 (1936). This principle of law, commonly applied with respect to covenants not to compete, is, in our opinion, applicable in the present case as well. We therefore conclude that if William had received the equity interest in Gevyn to which petitioners claim he was entitled; he would have realized ordinary income upon receiving it, to the extent of its fair market value. See Beal's Estate v. Commissioner,82 F.2d 268 (2d Cir. 1936), affg. 31 B.T.A. 966 (1934). The record discloses that William did not receive an equity interest in Gevyn. Rather, he was paid $300,000 in cash. As receipt of the equity interest would have caused William to realize ordinary income, any *185 cash payments received in lieu thereof would be characterized as ordinary income as well. We therefore hold that the $300,000 in issue was ordinary income. Herman Shumlin,16 T.C. 407 (1951). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. See JackE. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971).