ALBERT F. STIPEK AND ELINORE L. STIPEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stipek v. Commissioner
Docket No. 4609-79.
United States Tax Court
T.C. Memo 1980-404; 1980 Tax Ct. Memo LEXIS 184; 40 T.C.M. (CCH) 1296; T.C.M. (RIA) 80404; September 18, 1980, Filed Albert F. Stipek, pro se. Virginia Schmid, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income tax of $5,116.95. The sole issue presented here for our decision is whether a payment received by Mr. Stipek as consideration for his early retirement from his employment is taxable as a capital gain distribution or as ordinary income. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Albert F. Stipek (hereinafter referred to as Albert or petitioner) and Elinore L. Stipek timely filed a joint Federal income tax return for the taxable year 1975. At the time of the filing of the petition in this suit, the Stipeks resided *185 in Broadview, Illinois. Albert commenced employment with Western Electric Co., an affiliate of American Telephone and Telegraph Corp. and hereinafter referred to as "Bell," during 1937. As of 1975, Albert was a department chief in Bell's Customer Planning Division earning a yearly salary of $26,438.10. Other than his 1937 application for employment which was accepted, petitioner has no recollection that any formal written employment contract was entered into between Bell and himself. In 1975 and prior years, in addition to his annual salary, petitioner received or was offered from Bell certain other employee benefits. Among these benefits was an employee pension plan in which petitioner was a participant. This plan went into effect on January 1, 1913. It provides, among other things, for employees' pensions, disability benefits and death benefits. The plan provides for a percentage reduction in benefits for anyone retiring prior to age 55; however, a vested employee retiring after age 55 but prior to mandatory retirement at age 65 sustains reduced benefits only to the extent that his years of service are less than they would have been had he continued to work until age *186 65. An employee with 30 years or more of service qualifies for a pension regardless of what age he retires at. Provision is also made for a minimum monthly payment of $180 for service of more than 30 years but less than 40 years, and $200 for those with more than 40 years of service. Bell pays the entire cost of the plan. Another benefit plan in which Albert participated was the Bell System Savings Plan for Salaried Employees. The plan was initiated in July of 1969 and petitioner was a participant from its inception. Under the plan, a portion of the employee's salary (matched by his employer) is invested in a trust fund. Provision is made for withdrawals during the course of employment, subject to certain restrictions. Upon resignation, the employee receives all funds in his account except those attributable to Bell's contributions during the three preceding years. Late in 1975, due to adverse economic conditions, Bell undertook a reduction in its work force. As part of this reduction, Albert was advised by Bell that he could remain employed, but would be demoted and thus receive a reduced salary. Alternatively, he could retire and receive, in addition to any other benefits *187 to which he might be entitled, a lump sum amount equal to his then current annual salary provided he sign an agreement form.Confronted with these two options, Albert chose to accept early retirement. On December 1, 1975, Albert signed the required agreement which provided in pertinent part as follows: I understand the provisions of the special program which affords me the option of early retirement and hereby request the Western Electric Company to approve my participation for retirement under this program. (I may choose the survivor option as part of this request.) I understand that if approved, my retirement will be scheduled by the Company and will be irrevocable and preclude future employment with the Western Electric Company, A.T.&T. and other associated Companies in the Bell System. I further understand and agree not to accept employment with a company which is in direct competition with Western Electric Company for a period of two years from retirement. I also understand I am under the requirement applicable to all employees and retirees not to disclose private or proprietary Western Electric information for personal gain at any time. On December 31, 1975, Albert's *188 last day after 37 1/2 years of employment with Bell, he received a check in the amount of $21,115.69 (gross amount of $28,531 less Federal and state taxes) as his lump-sum early retirement allowance. Petitioner deposited this check into his savings account on January 2, 1976. After his retirement at age 57, Albert received a pension from Bell in accordance with the terms of the plan. Had Albert remained employed by Bell until normal retirement age (65), his pension would have been based on 45 years of service rather than 37 years. On his 1975 Federal income tax return, petitioner reported one-half of the $28,531, or $14,265, as a capital gain distribution, noting that the source was a "special settlement for early retirement." Respondent in his notice of deficiency determined that Albert was not entitled to capital gain treatment for the $28,531 payment, but rather the amount was includable as ordinary income. OPINION Petitioner was employed by Bell for 37-1/2 years. Late in 1975, as part of a reduction in its work force, Bell offered petitioner the choice of remaining employed, but in a demoted capacity and at a reduced salary, or retiring early and receiving a lump-sum *189 amount equal to his then current annual salary in addition to any other benefits to which he might be entitled. Petitioner elected to retire and he received the agreed upon amount after signing a document accepting certain conditions specified by Bell. Petitioner reported the payments as a capital gain distribution on his Federal income tax return. Respondent seeks to recharacterize the payment as ordinary income. Termination or severance pay constitutes gross income to the recipient, Section 1.61-2(a)(1), Income Tax Regs., and not an excludable gift. Botchford v. Commissioner, 81 F.2d 914 (9th Cir. 1936), affg. 29 B.T.A. 656 (1933). Petitioner urges that the payment cannot be compensation for past services that were adequately compensated when rendered.But "[If] the payment was made with the intention of requiting past services or employment more generously or completely, it is taxable." Jackson v. Commissioner, 25 T.C. 1106, 1110 (1956). That the termination payment constitutes income does not end our inquiry, however, as the matter of characterization remains. Petitioner bases his capital gain treatment of the lump sum distribution *190 on section 1240. [1] However, that section is a very narrowly drawn provision originally enacted in 1951 as section 117(p), I.R.C. 1939. Although the purpose of section 1240 is not entirely clear, it is directed at employees with an interest in a business who choose to receive a lump sum payment in lieu of contract rights upon termination of their employment rather than leaving their retirement income dependent upon the operation of the business. Apparently in order to alleviate the impact of higher marginal rates due to the bunching of income in one year, capital gains treatment was afforded where certain strict requirements were satisfied. S. Rept. No. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 458, 493-494. *191 Given this legislative purpose, a critical requirement of section 1240 is that the employee assign or release a percentage of his right to receive future profits or receipts of his employer. Nothing in the record indicates that petitioner here ever had any right to receive future profits or receipts of Bell which he could be said to have released. Petitioner urges that he surrendered a right to a percentage of Bell's future profit in the form of (1) future salary increases, (2) Bell's share of contributions to the saving's plan, and (3) increased pension amount for additional years of service. None of these items represents a right of the petitioner, at the time of his election to retire, in the profits of Bell. It is speculation whether Mr. Stipek would have continued his employment in order to receive these benefits.Even were we to assume that petitioner would have continued to work for Bell, these additional amounts he would have been entitled to would not have been paid out of the profits of Bell in the sense contemplated by Congress when it enacted this relief provision. Rather, Bell would have paid them out of its operating expense budget as a liability of the company, *192 rather than out of its earnings or profits in the manner in which dividends and other forms of compensation to the owners of a business are paid. Furthermore, petitioner conveyed additional rights through his release in agreeing not to work for Bell or any competitor. These are certainly not a right to future earnings or profits. See, S. Rept. No. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 458, 578 ("the assignment or release * * * must convey all the rights of the employee to such future earnings and profits, and must convey no other rights of the employee * * *"). Having found that section 1240 is of no help to petitioner, we now turn to the specific nature of the agreement entered into. There is no evidence that petitioner had any right, contractual or otherwise, to force Bell to employ him after December 31, 1975.The company did offer to allow petitioner to remain as an employee, but he chose not to accept; and further it is unclear from the record whether Bell was in any way obliged to make this offer in the first place. Even if we found that petitioner had a contractual right to continue employment, any payment received as consideration for cancellation *193 of that right would be taxable as ordinary income because it was received as a substitute for compensation. Henry v. Commissioner, 62 T.C. 605, 606 (1974); Jessop v. Commissioner, 16 T.C. 491 (1951); Cf. Hort v. Commissioner, 313 U.S. 28 (1941) (payment received by landlord for cancellation of a lease is ordinary income as it is a substitute for future rental payments). Furthermore, the right to continue to perform services is not a capital asset. McFall v. Commissioner, 34 B.T.A. 108 (1936). And even were part of the payment to be allocated, for example, to petitioner's agreement not to work for a competing business for a period of 2 years, this would still result in the receipt of ordinary income. Ullman v. Commissioner,264 F.2d 305 (2d Cir. 1959); Estate of Beals v. Commissioner,82 F.2d 268 (1936), affg. 31 B.T.A. 966 (1934); Jessop v. Commissioner,supra;Estate of Hyde v. Commissioner,42 B.T.A. 738 (1940). Finally, there is no claim that any portion of the payment is attributable to a distribution from either the savings *194 or the pension plan. We are forced to agree with respondent that the proper characterization of the payment in question is ordinary income. We also note that to partially relieve the Stipek's burden in reporting two years' salaries in one year, the respondent has conceded that Albert properly elected the benefits of income averaging for the taxable year 1975. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue herein, unless otherwise indicated. Section 1240 provides: SEC. 1240. TAXABILITY TO EMPLOYEE OF TERMINATION PAYMENTS. Amounts received from the assignment or release by an employee, after more than 20 years' employment, of all his rights to receive, after termination of his employment and for a period of not less than 5 years (or for a period ending with his death), a percentage of future profits or receipts of his employer shall be considered an amount received from the sale or exchange of a capital asset held for more than 6 months if-- (1) such rights were included in the terms of the employment of such employee for not less than 12 years, (2) such rights were included in the terms of the employment of such employee before the date of enactment of this title, and (3) the total of the amounts received for such assignment or release is received in one taxable year and after the termination of such employment. This section was repealed by sec. 1901(a)(139), Tax Reform Act of 1976, 90 Stat. 1764, for taxable years beginning after December 31, 1976.↩