THURLOW E. McFall, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

The Michigan Trust Company and Grace A. McGowan, Co-Executors of the Estate of Irvin E. McGowan, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 61951, 62127. Promulgated March 17, 1936.

*Frank E. Seidman, C. P. A.,* and *Jacob S. Seidman, C. P. A.,* for the petitioners.

*Hartford Allen, Esq.,* for the respondent.

110

STERNHAGEN: The Commissioner first thought, when determining the deficiency, that what petitioners received from Clutter & Co. was by way of damages for a supposed breach of the contract of employment. But there is nothing to support such a hypothesis either as to breach or damage, and this contention is not now made.

The petitioners' contention is that they sold their contracts in 1929, that the contracts were property, that they had owned the contracts since 1926, more than two years, and that the resulting gain, admitted to be $175,000 each, was a capital net gain under the Revenue Act of 1928, section 101, and not ordinary income. The Government argues, (1) that there is nothing to bring the 1929 transaction within section 101, Revenue Act of 1928, as a sale or exchange of capital assets, for there was no property transferred; (2) that there was only a termination by the parties of their contracts as a part of a wider plan, the effect of which was an anticipation by petitioners of their contractual compensation for services; and (3) if petitioners could be regarded as selling anything of their contracts, it was nothing they had held for two years but only a contingent right to receive compensation in the future.

The determination of deficiencies must, we think, be sustained. Petitioners did not sell their contracts, for inherently this they could not do. The contracts bound them to perform services of skill. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379. Before they had any contractual rights which they could sell, they were obligated to perform services for the company. All past services had been fully paid for and there was no due and unpaid amount to constitute a chose in action subject to assignment. On April 2, 1929, there was a right of petitioners to continue to perform service and then to be paid—to persist in their contractual relation for its agreed term. While this right is property in the constitutional sense in that it could not be arbitrarily legislated away, it is not capital. *Beals* v. *Commissioner*, 82 Fed. (2d) 268. It is a continuing right which goes hand in hand with performance. Before performance it is in embryo, and after payment it is exhausted. Obviously it is not the sort of property which is susceptible of ownership for a length of time as is a share of stock, a bond, or a thing. If services were performed and payment withheld for two years thereafter, there might be another question. Cf. *Chicago Title & Trust Co., Executor*, 33 B. T. A. 65 (on review, C. C. A., 7th Cir.); *Duluth, S. S. & A. Ry. Co* v. *Wilson*, 200 Mich. 313; 167 N. W. 55.

There is, we think, no need to attempt a discussion of the various meanings in law of the word "property", or to define the term as used in section 101. The purpose of the statute, whether it be liberal

or strict, is not served by including within it the contractual expectation of receiving pay for services not yet performed. The petitioners argue that they are like a lessor having a lease more than two years old, for a term still to run, who "sells" his remaining leasehold interest—the right to rent—for a lump sum. But this does not help their case, for if the analogy holds good, such a transfer is of the right to what is to come; and, like this case, is not the basis of a statutory capital gain. Nothing owned for two years has been sold, but only a potential right to be paid contemporaneously with performance.

Holding, for this reason, that the amount received was not a statutory capital gain, it is not necessary to agree with respondent's argument that petitioners were receiving in advance the pay which they would have received and for that reason the amount was ordinary income; or that petitioners were parties to a general plan to readjust the business and this was the price to them of ending their contract, and not of selling it. Our decision is sufficiently founded, we think, upon the transactions as they were stated by the parties themselves. It may be, however, that the anomalous sale by petitioners of their rights in a personal contract which they had yet to perform, to another, not in position to perform it, for cash, straightens out in the subsequent treatment of the contract. For notwithstanding the legal forms which were employed or the artificial conception that the contract was sold for cash, ultimately the parties to it abrogated it in the full light of the earlier transactions. It is not, therefore, a stretch of reason to say that this is what, in a layman's way, the petitioners had intended throughout their negotiations and agreement with Clutter & Co. to be understood as promising to do—to hold themselves bound, for a price, to terminate their employment contracts. Clearly, if the agreement with Clutter & Co. had been thus stated, the cash consideration received would have had no semblance of sale of property held for over two years.

*Judgment will be entered for the respondent.*