Salem D. and Sophie Caplan v. Commissioner.
Caplan v. Commissioner
Docket No. 51108.
United States Tax Court
T.C. Memo 1957-63; 1957 Tax Ct. Memo LEXIS 188; 16 T.C.M. (CCH) 273; T.C.M. (RIA) 57063; April 11, 1957
*188 Held, the sum of $9,200 received by petitioner in 1950 in consideration of the release of his employment contract is taxable as ordinary income, and not as capital gain. Carman E. Kipp, Esq., for the petitioners. John R. Gauntt, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioners for the calendar year 1950 in the amount of $968.96. The sole issue is whether the sum of $9,200 received by petitioners in 1950 from Arthur Caplan and Associates should be taxed as ordinary income or as long-term capital gain. Findings of Fact Petitioners are husband and wife who, in 1950, resided in Salt Lake City, Utah. Their joint return for 1950 was *189 filed with the collector of internal revenue for the district of Utah. In the early part of 1946, Salem D. Caplan, hereinafter referred to as petitioner, entered into a business association with Arthur Caplan, unrelated to petitioner, together with Helen Kaltenbacher, Beatrice R. Harris, Milton Lowy, and Harry Lowy, hereinafter referred to as the Caplan Associates, for the purpose of purchasing and selling war surplus items made available by the Federal Government. The arrangement between the parties was, in substance, that petitioner, an engineer, would provide his time and services, and the Caplan Associates provide the necessary capital. The profits and losses were to be shared on a basis of one-third by petitioner and two-thirds by Caplan Associates. Petitioner and the Caplan Associates were successful bidders for the property known as Camp Kearns in Utah which they desired to acquire for the purpose of a housing development. In July 1948, a corporation known as Kearns Townsite, Inc., hereinafter referred to as the corporation, was formed and all its outstanding capital stock was issued to the Caplan Associates. Petitioner received no stock. Under date of July 31, 1948, the *190 corporation addressed a letter to petitioner which upon his acceptance was to constitute their mutual agreement. The letter reads in part as follows: "This will confirm and evidence the understanding that we, the Kearns Town Site, Inc., a corporation, have reached with you in respect to your management and interest in the Camp Kearns project. When signed by each of us it will constitute our mutual agreement. "The undersigned corporation has purchased Camp Kearns near Salt Lake City, with the intention of developing, improving, selling and liquidating the land, buildings, materials, and other assets included therein. We have already invested the sum of approximately $60,000.00 on the project and will, as the occasions arise, invest further sums. It is impossible at this time to indicate the total investment that may be necessary and we are to be the sole judges as to the amount of money to be invested in the project. "We desire to employ you as General Manager of the project to which you will devote all of your time and attention, and without the written consent of the corporation, you will not engage in any other enterprise, business or venture, directly or indirectly. "For *191 your interest and services in and with the project as above stated, you are to receive 25% of all of the profit realized from the Kearns project, which shall be paid as hereinafter provided. You will be allowed as a drawing account against this 25% of the profits the sum of $600.00 per month. "The term 'profit' as herein used shall be determined according to normal accounting procedure and will be gross income for the fiscal year, less all necessary operating expenses, including Income, Corporation Franchise taxes and all assessments properly chargeable to the project. No deductions shall be made from the gross income in determining the amount of the profits on account of salaries paid to the officers of our corporation, or on account of services rendered by it. If the operations of any one year result in a loss, then one-fourth of the loss shall be accrued as an off-set to the amount accrued in your favor in the years when a profit is realized. This loss shall not obligate you personally, nor be used as an off-set against your salary advances. When your 25% of the net profits is determined the amount, less the $600.00 monthly advanced to you, shall be accrued on the books of the *192 corporation to you. The amount so accrued as being owing to you for your salary shall not become payable until the money owing to the War Assets Administration has been completely paid. * * * "This agreement shall be for a period of three years from this date and you have the option to renew the term thereof for two successive periods of three years each, provided, however, your death, your inability to discharge the duties as manager on account of physical or mental disability, or the sale and/or liquidations of all of the assets of the project, or a bonafide sale of all of the capital stock of the corporation to an outsider shall terminate this agreement and our respective rights and liabilities hereunder. However, in the event of a sale by the shareholders of the corporation, each of the shareholders will agree on the sale of their capital stock to pay you an amount equal to one-fourth of their gain, less the salary received by you. The corporation agrees to secure the signature of all of the shareholders of the corporation as evidence of their assent to this agreement, and will send you an executed copy of this agreement. In consideration of such payment by the shareholders of *193 the corporation, you will release the corporation of its liability to you on this contract and also from its liability to you as accrued on the books of the corporation, but providing always that the amount that would be so paid to you shall at all times be at least equal to the amount of the accrued liability on the books of the corporation. "In case of a sale of the assets of the corporation, the amount realized from the sale shall be taken into account in determining profits for that year. The corporation will then within ninety days after the date of the sale determine the amount of salary due to you, and if the sale is for cash, pay the amount forthwith, and if on terms, pay you your salary when installment payments on the purchase price are received, by applying to your account $1.00 out of every $4.00 received from the purchaser or purchasers. "If your understanding is as we have expressed it in this letter, will you kindly sign where indicated below? "Very truly yours, KEARNS TOWN SITE, INC. By /s/ Arthur Caplan "This conforms to my understanding and this will constitute our agreement. /s/ S. D.Caplan" On March 16, 1950, an agreement was entered into between petitioner *194 and the Caplan Associates reading as follows: "AGREEMENT "THIS AGREEMENT made and entered into this 16th day of March, 1950, by and between ARTHUR CAPLAN, individually, and on behalf of Helen Kaltenbacher, Joseph Kaltenbacher, Beatrice R. Harris, Milton Lowy and the Estate of Harry Lowy, Deceased, all of New York City, New York, for whom said Arthur Caplan holds power of attorney, hereinafter referred to as Parties of the First Part, and S. D. CAPLAN of Salt Lake City, Utah, hereinafter referred to as Party of the Second Part. "WITNESSETH: "WHEREAS, Arthur Caplan, Helen Kaltenbacher, Joseph Kaltenbacher, Beatrice R. Harris, Milton Lowy and the Estate of Harry Lowy, Deceased, are the owners of all of the issued and outstanding capital stock of Kearns Townsite, Inc. and "WHEREAS, said Party of the Second Part is employed as the General Manager of Kearns Townsite, Inc., under a certain contract of employment bearing date the 31st day of July, 1948, wherein and whereby said Party of the Second Part is engaged to devote all of his time and attention to the management and direction of said Kearns Townsite, Inc. for which he is to receive twenty five percent (25%) of all the profits *195 of said corporation, against which said Party of the Second Part is entitled to draw the sum of Six Hundred Dollars ($600.00) per month and "WHEREAS, said Parties of the First Part have heretofore entered into a certain agreement with Kenneth Biesinger, Max Bishop and Rowe W. Sims, hereinafter referred to as "Buyers", whereby Parties of the First Part have agreed to sell, assign and transfer all of their capital stock in Kearns Townsite, Inc., to the buyers, for and in consideration of a purchase price to be paid in installments, and "WHEREAS, Buyers are intending to have control and operation of the corporation after the date of the said sale, and they desire that the said corporation shall be released from the liability of the liability of the afore-mentioned contract between Kearns Townsite, Inc., and the Party of the Second Part, and "WHEREAS, the Party of the Second Part has released the corporation from liability under the terms of said contract, at the request of Parties of the First Part. "NOW, THEREFORE, in consideration of the execution of this release by the Party of the Second Part, the Parties of the First Part agree to pay to Party of the Second Part, twenty five *196 percent (25%) of the profit from the sale of the said capital stock as and when the said profit is realized, subject to the following limitations: "(1) No portion of this profit shall be payable to the Party of the Second Part until the installments of the purchase price received from the Buyers is sufficient to repay to the Parties of the First Part their loans to Kearns Townsite, Inc., and their investment in the capital stock of Kearns Townsite, Inc., and until after the payment of certain of the liabilities of Kearns Townsite, Inc. "(2) Simultaneously with the execution of this agreement, Parties of the First Part agree to pay to Party of the Second Part the sum of Two Thousand Dollars ($2,000.00). "(3) Commencing March 1st, 1950, Parties of the First Part agree to pay to Party of the Second Part the sum of Eight Hundred Dollars ($800.00) per month, said monthly payments to continue until such time as distributions to Party of the Second Part, as herein provided, shall equal the sum of Eight Thousand Dollars ($8,000.00), in a single calendar year, excluding this advance of Eight Hundred Dollars ($800.00) per month. "(4) When it becomes apparent that a distribution of Eight *197 Thousand Dollars $8000.00), or more, is to be made in a single calendar year, then from such distribution there shall be subtracted one-fourth of the total of the three following items: "(a) The amount which said Party of the Second Part has heretofore received from Kearns Townsite, Inc., under and pursuant to his contract of employment. "(b) The aforementioned sum of Two Thousand Dollars ($2000.00). "(c) The total of the sums paid at the rate of Eight Hundred Dollars ($800.00) per month. "(5) In calculating the amount of profits, it is presently anticipated that the only deductions to be made from the purchase price due to the Parties of the First Part are the items listed in the agreement between the Parties of the First Part and the purchasers of the capital stock, but there may be other deductions which will reduce the amount of the profit of the Parties of the First Part, and these items, if and when paid by the Parties of the First Part, shall be deductible in determining the profit to each of the Parties of the First Part. "(6) The Parties of the First Part agree to provide said Party of the Second Part with copies of all audits submitted to them by said Buyers under *198 and pursuant to the contract hereinabove referred to, and to advise said Party of the Second Part of all payments made under and pursuant to said contract, and or any extensions, modifications, supplements or any changes made in the agreement between Parties of the First Part and the Buyers, or their successors or assigns. "/s/ / Arthur Caplan. "/s/ / Arthur Caplan, for Helen Kaltenbacher, Joseph Kaltenbacher, Beatrice R. Harris and Milton Lowy and the Estate of Harry Lowy, Deceased. Parties of the First Part "/s/ / S. D.Caplan Party of the Second Part" In the taxable year 1950, petitioner received from the Caplan Associates the sum of $9,200 pursuant to the above agreement of March 16, 1950. In their joint return for 1950, petitioners reported the amount of $9,200 as long-term capital gain. The respondent determined it to be ordinary income. Petitioner was an employee of Kearns Townsite, Inc., and he was not a partner or co-adventurer with the Caplan Associates. The payments received by petitioner in 1950 from the Caplan Associates, pursuant to the agreement of March 16, 1950, were made pursuant to his employment contract with the corporation and constituted payment *199 for the release of such contract. Opinion LeMIRE, Judge: The question here is whether there was, in truth and reality, the sale of a capital asset within the meaning of the Federal tax statute. Petitioner contends that he was a partner or co-adventurer with the Caplan Associates in the Kearns camp site project; that the sale by the Caplan Associates of their capital stock of Kearns Townsite, Inc., was the sale of a capital asset held for more than six months; and, as petitioner was entitled to share in the realized gain, the payments made to him are likewise subject to treatment as long-term capital gains. The respondent, conceding that if the payments in question were the proceeds from the sale of petitioner's partnership interest, the capital gains provisions would be applicable, contends that petitioner was not a partner in the Kearns project, and that the proceeds constitute ordinary income as payment made to petitioner for the release of his employment contract with the corporation. The record primarily consists of the two agreements offered in evidence, the substance of which is set forth in our findings of fact. The agreement of July 31, 1948, was between the petitioner *200 and the corporation. It specifically provides that petitioner was to be employed as general manager for a period of three years with the option on his part to renew the term thereof for two successive periods of three years each. For such services petitioner was to receive one-fourth of the profits of the corporation to be computed under a prescribed formula, with a drawing account $600of per month. The agreement was subject to termination upon the happening of certain contingencies. In the event of a sale of the assets of the corporation the amount realized was to be taken into account in determining the profits for that year. In case of the sale of their capital stock by the shareholders, petitioner was to receive one-fourth of their gain less the salary received by him, but it did not provide how such gain was to be computed. Petitioner testified that he had been a partner with the Caplan Associates in various ventures during the period 1946 to 1948; we think the agreement of July 31, 1948, changed the character of that relationship and that by virtue thereof petitioner became an employee of the corporation and not a co-adventurer with the Caplan Associates. It is manifest by *201 petitioner's own testimony and the contracts in evidence that at no time was he a stockholder of the corporation. The subsequent agreement executed under date of March 16, 1950, between petitioner and the Caplan Associates, owners of all the outstanding capital stock of the corporation, shows that all the parties regarded petitioner's status as that of an employee of the corporation. It recites that petitioner, at the request of the stockholders, had released the corporation from its liability to him under his employment contract. It further provides that "in consideration of the execution of this release" by petitioner, the stockholders will pay to him "twenty-five (25%) of the profits from the sale of the stock", and, it prescribes a formula for determining the amounts to be paid and the times of payment. We think this record furnishes no evidence sufficient to support a finding that petitioner, after the execution of the agreement of July 31, 1948, was a partner or co-adventurer with the Caplan Associates in the Kearns camp project. The agreement executed March 16, 1950, between petitioner and the stockholders, specifically providing that the payments in question were made *202 in consideration of the execution by petitioner of a release of the corporation from its liability to him under the employment contract, in our opinion, precludes us from holding that such payments were made for any other purpose. Petitioners cite no authorities in support of their contention. We think the well established rule that payments received by an employee for the release of his employment contract are subject to tax as ordinary income under section 22(a) of the Internal Revenue Code of 1939 is applicable here. George K. Gann, 41 B.T.A. 388; Thurlow E. McFall, 34 B.T.A. 108; Frank Hodous, 14 T.C. 1301 and F. W. Jessop, 16 T.C. 491. We, therefore, hold that the respondent correctly determined that the amount of $9,200 received by petitioners in the taxable year 1950, constituted ordinary income. Decision will be entered for the respondent.